# United States District Court
# Northern District of Alabama
# Eastern Division



| | |
|---|---|
| Melvin L. Bush, | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ] CV-02-N-0417-E |
| | ] |
| Thomas E. White, Secretary, | ] |
| Department of the Army, | ] |
| | ] |
| Defendant(s). | ] |

## Memorandum of Opinion



ENTERED

FEB 2 5 2003

## I.    Introduction

The court has under submission the motion for summary judgment of defendant Thomas E. White ("White"), which was filed October 7, 2002. (Doc. #8). Plaintiff Melvin E. Bush ("Bush") alleges race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000(e) *et seq.*, and disability discrimination under the Americans with Disabilities Act, 42 U.S.C.A. 12101 and the Rehabilitation Act 29 U.S.C.A. 791(g) *et seq.* when he was not selected for a Recreation Specialist GS 188-07 position with the Alabama National Guard after the base closure of Ft. McClellan. The issues have been briefed by both parties and are now ripe for review. Upon review of the relevant statutes, case law and arguments of the parties, the court finds that the motion is due to be granted.

## II.    Statement of Facts

Plaintiff was a former employee with Army Community Services at Ft. McClellan, Alabama, where he was employed as a Supervisory Recreation Specialist GS 188-09. On September 30, 1999, he was separated from that position due to the closure of Ft. McClellan.

Plaintiff is a black male and claims to have a disability due to a back problem for which he received back surgery in 1994, a spinal fusion in 1996, and another surgery in 1997, at which time he was returned to work with limitations. At the time of his separation from Ft. McClellan, the plaintiff was not under any physical restrictions and could fully perform his job. (Bush Dep. at p.14).

As a result of the Base Realignment and Closure ("BRAC") process, Ft. McClellan was designated for closure. The real property formerly known as Ft. McClellan is now the location of, among other things, the Alabama National Guard Training facility. To support the National Guard's mission, Congress passed legislation to allow the retention of civilian employee positions at military training bases transferred to the National Guard. 10 U.S.C. § 2687. The Army authorized fifty-eight positions to support the mission at Ft. McClellan.

To fill these positions, in September 1999, Ft. McClellan convened a selection panel comprised of Alabama Army National Guard members. The selection committees met in pairs of two and were divided according to the members' functional areas of expertise. All but one of the fifty-eight positions were technically assigned to the U.S. Army Tank-Automotive and Armaments Command (TACOM), the higher headquarters of Anniston Army Depot (ANAD). Lieutenant Colonel David A. McPherson ("McPherson") and Major Cynthia Bachus ("Bachus") were the two members of the selection panel who made the hiring decision for the position of Recreation Specialist, for which the plaintiff had applied. Normally, employment decisions during a base closure are made based on a reduction in force procedure ("RIF"). In this case, however, TRADOC decided that the panel would choose from qualified "excess employees" still on the rolls at Ft. McClellan at the time the

2

selections were made rather than by RIF procedures. Patricia Robinson ("Robinson"), then the Personnel Management Specialist in the Directorate of Personnel, made the initial determination as to which "excess employees" qualified for the National Guard positions.

The screening criteria used by Robinson was based on the Office of Personnel Management guidelines. Because of the short time period allotted to fill the positions, the panel members conducted no interviews. To make their decision, the panel was provided with the Official Personnel Folder of each person identified by Robinson as meeting the qualifications of the positions. Although federal regulations prohibit identifying information regarding race and disability from being included in Official Personnel Folders, the parties dispute whether the plaintiff's file contained such information. (Robinson Dep. at pp. 14-19; Robinson Decl. ¶ 11; Bush Dep. at pp. 63-68). The parties also dispute whether the folder contained information regarding the plaintiff's claimed disability. It is undisputed, however, that the plaintiff was not personally acquainted with either of the panel members (although he was acquainted with Robinson). The plaintiff was considered but not selected for the position. Instead, the panel chose Mr. James Richey ("Richey"), a white male. Previously Bush served as Richey's supervisor.

On February 29, 2000, the plaintiff filed a formal EEOC complaint alleging that he was discriminated against due to race and disability.

## III.    Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

3

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

4

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 746 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility

5

determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion

### A. General Analytical Framework

If Bush is to prevail on his disparate treatment claims, he must submit some proof of his employer's discriminatory motive, that is, some causal link between his race and the actions of which he complains. *See Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000). In a Title VII case such as this, where the plaintiff relies solely upon circumstantial evidence, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-254 & n. 6 (1980), 101 S. Ct. 1089, 1094 & n. 6, 67 L. Ed. 2d 207 & n. 6. "Demonstrating a prima facie case is not onerous, it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Lathem v. Department of Children & Youth Servs.*, 172 F.3d 786, 792 (11th Cir. 1999). In this case, Bush's prima facie case requires proof that he was: (1) a member of the protected group (2) subjected to an adverse employment action (3) qualified to do the job; and (4) replaced or lost the position to someone outside of that protected group. *Jones v. Bessemer Carraway Med.* Center, 137 F.3d 1306, 1310 (11th Cir.

6

1998); *McDonnell Douglas*, 411 U.S. at 802; *Id.* at 802 n.13; *accord Chapman*, 229 F.3d at 1024 (summarizing the factors in an ADA disparate treatment case).

Once the plaintiff establishes a prima facie case, the burden of production then shifts to the employer to articulate a "legitimate nondiscriminatory reason" for the alleged discriminatory employment action. *Lathem*, 172 F.3d at 793. "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Chapman*, 229 F.3d at 1024 (quoting *Burdine*, 450 U.S. at 254-55, 101 S.Ct. At 1094 (citation and footnote omitted)).

After the employer presents a legitimate nondiscriminatory reason for its action, the presumption of discrimination is eliminated leaving the elements of the prima facie case. *Id.* at 1024-25. The plaintiff must then prove by a preponderance of the evidence that the reason offered by the employer was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *Id.* The plaintiff may meet this burden by persuading the fact-finder either directly that a discriminatory reason more than likely motivated the employer, or indirectly that the employer's proffered explanation is unworthy of belief. *Id.* If the plaintiff succeeds in meeting this burden, the disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination and preclude summary judgment. *Id.* at 1025.

7

### B.    Race Discrimination

####    1.    Prima Facie Case

Defendant contends that the plaintiff cannot demonstrate a prima facie case because he cannot establish that any person on the selection panel knew of his protected status (black) and that an employer must know an individual's race to intentionally discriminate based upon that factor. *Trotter v. Board of Trustees of University of Alabama*, 91 F.3d 1449, 1456 (11th Cir. 1996) (discussing lack of knowledge of the plaintiff's race as a factor in rebutting the plaintiff's presumption of discrimination); *see also Lubetsky v. Applied Card Systems, Inc.*, 296 F.3d 1301, 1306 (11th Cir. 2002) (holding that an employer cannot intentionally discriminate against an individual based on his religion unless the employer knows the individual's religion).

Although federal law prohibits any notation in the Official Personnel Folder or 201 file, regarding an applicant's race or disability, the plaintiff contends that the selection panel was aware of his race. (Bush Dep. at pp. 63-68). Plaintiff's deposition maintains that there were documents which would have identified his race but claims he has no way to verify what documents may have traversed in and out of the file. He also claims that personnel employees, such as Robinson might have spoken to the committee about his race. In his deposition he testified he believed she "might have had a hand" in briefing the selection committee because she was "looking out for herself." (Bush Dep. at pp. 31, 37). Defendant contends, however, that the plaintiff's speculations do not amount to triable issues of fact. (Doc. # 15, p.2); *see Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989) (holding that subjective conclusion that there was racial discrimination without supporting evidence is

8

insufficient to establish pretext); *Mays v. Union Camp Co.*, 113 F. Supp. 2d 1233, 1244 (M.D. Ala. 2000); *Lewis Chattahoochee Valley Community College*, 136 F. Supp. 2d 1232, 1241-42 (M.D. Ala. 2001).

The court is inclined to accept the defendant's arguments and grant summary judgment, especially given the plaintiff's admission that "[t]here's no record of my injuries [in the file]." (Bush Dep. at p. 39). The court also notes that the record is devoid of any evidence that the plaintiff actually saw any documents referring to his race and/or disability placed in his file. Defendant's case is bolstered by the fact that it has filed evidence from those who actually handled the documents and the presence of federal laws prohibiting the behavior alleged by the plaintiff. (Doc. #10, Robinson Aff. at ¶ 11; McPherson Aff. at p.31) Thus, the court finds the plaintiff's speculations are unlikely to ever amount to issues of triable fact. Accordingly, the court is of the opinion that summary judgment could be granted based on the failure to establish a prima facie case.

## 2.    **Legitimate Nondiscriminatory Reasons and Proof of Pretext**

Assuming, *without deciding*, that Bush has made out a prima facie case of intentional discrimination, the burden shifts to the defendant to articulate one or more "legitimate, non-discriminatory reasons for its employment action." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). This burden is "exceedingly light," *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138 (11th Cir. 1983), and the defendant "need only offer admissible evidence sufficient to raise a genuine issue of material fact as to whether it had a legitimate reason." *Hill v. Seaboard C.L.R. Co.*, 767 F.2d 771 (11th Cir. 1985). Once the employer has provided such reasons, Bush must prove that the "proffered reason was not the true reason for the

employment decision ... [t]his burden now merges with the ultimate burden of persuading the court that he has been the victim of intentional discrimination. He may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. In proving pretext a "plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it; the employee cannot succeed by simple quarreling with the wisdom of that reason." *Chapman*, 229 F.3d 1012 (citation omitted).

The defendant does not dispute that the plaintiff was indeed highly qualified for the position. However, the defendant has also clearly established that the decision was based on articulated, legitimate, non-discriminatory reasons. As stated in the record.

> We went through document by document to determine the – we looked at the performance appraisals, we looked for education, we looked at work history, jobs held and we compared them to the job descriptions which we had copies of. (McPherson Dep. at p. 13).

> Sir, one of the things that we – that I looked for personally was the performance appraisals, the annual performance appraisal. I attempted to review that. I attempted to look at the job history and compare it to the position that we were hiring for to ensure they were the best suited for the position. That's a very important factor. And we stressed education as well. (*Id.* at pp. 17-18).

Bush contends that his seniority and his status as a veteran entitled him to the job over his former supervisee. It appears that had reduction-in-force procedures been used, that might have been the case; however, the selection committee used a process to choose

from "excess employees" which allowed the selection committee more flexibility. Nevertheless, even if the plaintiff believes that he was more qualified than Richey, management was entitled to its selection unless the disparity in qualifications is so glaring as to "virtually jump off the page and slap [one] in the face." *Cofield v. Goldkist*, 267 F.3d 1264 (11th Cir. 2001) (quoting *Denny v. City of Albany*, 247 F.3d 1172, 1187 (11th Cir. 2002)); *see also id.* at 1269 ("[F]ederal courts 'do not sit as super-personnel department[s] that reexamine an entity's business decisions.'"). Accordingly the court finds that the relevant inquiry is whether the disparity between the candidates was so great that a reasonable fact finder could infer that McPherson did not believe Richey to be better qualified.

Plaintiff bases most of his arguments on the fact that he had better supervisory skills than Richey. Yet McPherson explains that the selection panel was not necessarily looking for a supervisor. Rather, the panel made its selection based on education, performance appraisals, prior work history as it related to the position. (McPherson Dep. at 43). Specifically McPherson indicates that "[w]e weren't looking for a supervisor. And I don't recall what would have been in his record at that time. But at that time that was not an important criteria. (*Id.* at 43). Outside of Bush's speculations regarding the contents of his file, his case includes no evidence that the selection panel's actions were pretextual or based upon race.[1] The scenario which the court finds more likely is that the selection panel

---

[1] Plaintiff himself stated that, although he considered Richey to be slow that when he supervised Richey he told him he was "doing okay." (Bush Depo. at p. 47). The following line of questioning is also informative:

Q.    Do you think his [performance] appraisals reflect any negative comments
A.    I don't think so.
Q.    So, according to his appraisals, he did a fairly good job?
A.    Yes.

11

was trying to quickly fill a number of positions and was choosing from several qualified candidates. McPherson chose to emphasize certain qualifications over length of service and supervisory skills and the court can not second-guess that decision. *Goldkist*, 267 F.3d at 1269. Accordingly the court will grant the defendant's motion for summary judgment on the plaintiff's race discrimination claims.

### C.    Disability Discrimination

The Rehabilitation Act (the Act) prohibits federal agencies from discriminating against otherwise qualified  individuals with a disability. 29 U.S.C. § 791. To establish a prima facie case of discrimination under the Act, an individual must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability. *Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d 907, 910, 915 (11th Cir. 1996); *Servino v. North Fort Myers Fire Control Dist.*, 935 F.2d 1179, 1183 (11th Cir. 1991). The defendant contends that summary judgment is merited because the plaintiff cannot prove either the first or the third prongs of the prima facie case and the court agrees.

The Act defines "individual with a disability" as any person who: (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment. 29 U.S.C. § 706(8)(B). To qualify as disabled under subsection (A) of the ADA's definition of disability, a claimant must initially prove that he or she has a physical or mental

---

(*Id.*).

12

impairment. 42 U.S.C. § 12102(2)(A); *Toyota Motor Manufacturing, Kentucy Inc. v. Williams*, 122 S. Ct. 681 (2002).

Plaintiff alleges that his non-selection was due to his disability and that the defendant was aware of his disability at the time of his non-selection (Complaint ¶¶ 16, 19). Yet the plaintiff's answers to his depositions reveal that he had no disability at the time of his separation from Ft. McClellan. (Bush Dep. at 14, 61). Defendant argues and the court agrees that the plaintiff's condition amounted to a "temporary inability to work while recuperating from surgery." As such it was not evidence of a disability covered by the Act. *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999). Because the plaintiff was under no physical constraints at the time the employment decision was made, the court cannot find that he was discriminated against because of his disability. Moreover, even if the plaintiff could establish a prima facie case, the court reiterates its holding discussed above that there is absolutely no evidence that the decision was pretextual.

## V.    Conclusion

The court will enter an order confirming this memorandum of opinion.

Done, this 24th of February, 2003.


_____
Edwin Nelson
United States District Judge


13

# United States District Court
# Northern District of Alabama
# Eastern Division

| | |
|---|---|
| **Melvin L. Bush,** | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ]   CV-02-N-0417-E |
| | ] |
| **Thomas E. White, Secretary,** | ] |
| **Department of the Army,** | ] |
| | ] |
| Defendant(s). | ] |

## Memorandum of Opinion

## I.    Introduction

The court has under submission the motion for summary judgment of defendant Thomas E. White ("White"), which was filed October 7, 2002. (Doc. #8). Plaintiff Melvin E. Bush ("Bush") alleges race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000(e) *et seq.*, and disability discrimination under the Americans with Disabilities Act, 42 U.S.C.A. 12101 and the Rehabilitation Act 29 U.S.C.A. 791(g) *et seq.* when he was not selected for a Recreation Specialist GS 188-07 position with the Alabama National Guard after the base closure of Ft. McClellan. The issues have been briefed by both parties and are now ripe for review. Upon review of the relevant statutes, case law and arguments of the parties, the court finds that the motion is due to be granted.

## II.    Statement of Facts

Plaintiff was a former employee with Army Community Services at Ft. McClellan, Alabama, where he was employed as a Supervisory Recreation Specialist GS 188-09. On September 30, 1999, he was separated from that position due to the closure of Ft. McClellan.

Plaintiff is a black male and claims to have a disability due to a back problem for which he received back surgery in 1994, a spinal fusion in 1996, and another surgery in 1997, at which time he was returned to work with limitations. At the time of his separation from Ft. McClellan, the plaintiff was not under any physical restrictions and could fully perform his job. (Bush Dep. at p.14).

As a result of the Base Realignment and Closure ("BRAC") process, Ft. McClellan was designated for closure. The real property formerly known as Ft. McClellan is now the location of, among other things, the Alabama National Guard Training facility. To support the National Guard's mission, Congress passed legislation to allow the retention of civilian employee positions at military training bases transferred to the National Guard. 10 U.S.C. § 2687. The Army authorized fifty-eight positions to support the mission at Ft. McClellan.

To fill these positions, in September 1999, Ft. McClellan convened a selection panel comprised of Alabama Army National Guard members. The selection committees met in pairs of two and were divided according to the members' functional areas of expertise. All but one of the fifty-eight positions were technically assigned to the U.S. Army Tank-Automotive and Armaments Command (TACOM), the higher headquarters of Anniston Army Depot (ANAD). Lieutenant Colonel David A. McPherson ("McPherson") and Major Cynthia Bachus ("Bachus") were the two members of the selection panel who made the hiring decision for the position of Recreation Specialist, for which the plaintiff had applied. Normally, employment decisions during a base closure are made based on a reduction in force procedure ("RIF"). In this case, however, TRADOC decided that the panel would choose from qualified "excess employees" still on the rolls at Ft. McClellan at the time the

selections were made rather than by RIF procedures. Patricia Robinson ("Robinson"), then the Personnel Management Specialist in the Directorate of Personnel, made the initial determination as to which "excess employees" qualified for the National Guard positions.

The screening criteria used by Robinson was based on the Office of Personnel Management guidelines. Because of the short time period allotted to fill the positions, the panel members conducted no interviews. To make their decision, the panel was provided with the Official Personnel Folder of each person identified by Robinson as meeting the qualifications of the positions. Although federal regulations prohibit identifying information regarding race and disability from being included in Official Personnel Folders, the parties dispute whether the plaintiff's file contained such information. (Robinson Dep. at pp. 14-19; Robinson Decl. ¶ 11; Bush Dep. at pp. 63-68). The parties also dispute whether the folder contained information regarding the plaintiff's claimed disability. It is undisputed, however, that the plaintiff was not personally acquainted with either of the panel members (although he was acquainted with Robinson). The plaintiff was considered but not selected for the position. Instead, the panel chose Mr. James Richey ("Richey"), a white male. Previously Bush served as Richey's supervisor.

On February 29, 2000, the plaintiff filed a formal EEOC complaint alleging that he was discriminated against due to race and disability.

**III.  Standard of Review**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 746 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility

determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.   Discussion

### A.   General Analytical Framework

If Bush is to prevail on his disparate treatment claims, he must submit some proof of his employer's discriminatory motive, that is, some causal link between his race and the actions of which he complains. *See Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000). In a Title VII case such as this, where the plaintiff relies solely upon circumstantial evidence, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-254 & n. 6 (1980), 101 S. Ct. 1089, 1094 & n. 6, 67 L. Ed. 2d 207 & n. 6. "Demonstrating a prima facie case is not onerous, it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Lathem v. Department of Children & Youth Servs.*, 172 F.3d 786, 792 (11th Cir. 1999). In this case, Bush's prima facie case requires proof that he was: (1) a member of the protected group (2) subjected to an adverse employment action (3) qualified to do the job; and (4) replaced or lost the position to someone outside of that protected group. *Jones v. Bessemer Carraway Med. Center*, 137 F.3d 1306, 1310 (11th Cir.

1998); *McDonnell Douglas*, 411 U.S. at 802; *Id.* at 802 n.13; *accord Chapman*, 229 F.3d at 1024 (summarizing the factors in an ADA disparate treatment case).

Once the plaintiff establishes a prima facie case, the burden of production then shifts to the employer to articulate a "legitimate nondiscriminatory reason" for the alleged discriminatory employment action. *Lathem*, 172 F.3d at 793. "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Chapman*, 229 F.3d at 1024 (quoting *Burdine*, 450 U.S. at 254-55, 101 S.Ct. At 1094 (citation and footnote omitted)).

After the employer presents a legitimate nondiscriminatory reason for its action, the presumption of discrimination is eliminated leaving the elements of the prima facie case. *Id.* at 1024-25. The plaintiff must then prove by a preponderance of the evidence that the reason offered by the employer was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *Id.* The plaintiff may meet this burden by persuading the fact-finder either directly that a discriminatory reason more than likely motivated the employer, or indirectly that the employer's proffered explanation is unworthy of belief. *Id.* If the plaintiff succeeds in meeting this burden, the disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination and preclude summary judgment. *Id.* at 1025.

**B.     Race Discrimination**

      **1.     Prima Facie Case**

Defendant contends that the plaintiff cannot demonstrate a prima facie case because

he cannot establish that any person on the selection panel knew of his protected status

(black) and that an employer must know an individual's race to intentionally discriminate

based upon that factor. *Trotter v. Board of Trustees of University of Alabama*, 91 F.3d 1449,

1456 (11th Cir. 1996) (discussing lack of knowledge of the plaintiff's race as a factor in

rebutting the plaintiff's presumption of discrimination); *see also Lubetsky v. Applied Card*

*Systems, Inc.*, 296 F.3d 1301, 1306 (11th Cir. 2002) (holding that an employer cannot

intentionally discriminate against an individual based on his religion unless the employer

knows the individual's religion).

Although federal law prohibits any notation in the Official Personnel Folder or 201 file,

regarding an applicant's race or disability, the plaintiff contends that the selection panel

was aware of his race. (Bush Dep. at pp. 63-68). Plaintiff's deposition maintains that there

were documents which would have identified his race but claims he has no way to verify

what documents may have traversed in and out of the file. He also claims that personnel

employees, such as Robinson might have spoken to the committee about his race.  In his

deposition he testified he believed she "might have had a hand" in briefing the selection

committee because she was "looking out for herself." (Bush Dep. at pp. 31, 37). Defendant

contends, however, that the plaintiff's speculations do not amount to triable issues of fact.

(Doc. # 15, p.2); *see Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989) (holding that

subjective conclusion that there was racial discrimination without supporting evidence is

insufficient to establish pretext); *Mays v. Union Camp Co.*, 113 F. Supp. 2d 1233, 1244 (M.D. Ala. 2000); *Lewis Chattahoochee Valley Community College*, 136 F. Supp. 2d 1232, 1241-42 (M.D. Ala. 2001).

The court is inclined to accept the defendant's arguments and grant summary judgment, especially given the plaintiff's admission that "[t]here's no record of my injuries [in the file]." (Bush Dep. at p. 39). The court also notes that the record is devoid of any evidence that the plaintiff actually saw any documents referring to his race and/or disability placed in his file. Defendant's case is bolstered by the fact that it has filed evidence from those who actually handled the documents and the presence of federal laws prohibiting the behavior alleged by the plaintiff. (Doc. #10,  Robinson Aff. at ¶ 11; McPherson Aff. at p.31) Thus, the court finds the plaintiff's speculations are unlikely to ever amount to issues of triable fact. Accordingly, the court is of the opinion that summary judgment could be granted based on the failure to establish a prima facie case.

## 2.    **Legitimate Nondiscriminatory Reasons and Proof of Pretext**

Assuming, *without deciding*, that Bush has made out a prima facie case of intentional discrimination, the burden shifts to the defendant to articulate one or more "legitimate, non-discriminatory reasons for its employment action." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). This burden is "exceedingly light," *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138 (11th Cir. 1983), and the defendant "need only offer admissible evidence sufficient to raise a genuine issue of material fact as to whether it had a legitimate reason." *Hill v. Seaboard C.L.R. Co.*, 767 F.2d 771 (11th Cir. 1985). Once the employer has provided such reasons, Bush must prove that the "proffered reason was not the true reason for the

employment decision ... [t]his burden now merges with the ultimate burden of persuading the court that he has been the victim of intentional discrimination. He may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. In proving pretext a "plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it; the employee cannot succeed by simple quarreling with the wisdom of that reason." *Chapman*, 229 F.3d 1012 (citation omitted).

The defendant does not dispute that the plaintiff was indeed highly qualified for the position. However, the defendant has also clearly established that the decision was based on articulated, legitimate, non-discriminatory reasons. As stated in the record.

> We went through document by document to determine the – we looked at the performance appraisals, we looked for education, we looked at work history, jobs held and we compared them to the job descriptions which we had copies of. (McPherson Dep. at p. 13).

> Sir, one of the things that we – that I looked for personally was the performance appraisals, the annual performance appraisal. I attempted to review that. I attempted to look at the job history and compare it to the position that we were hiring for to ensure they were the best suited for the position. That's a very important factor. And we stressed education as well. (*Id.* at pp. 17-18).

Bush contends that his seniority and his status as a veteran entitled him to the job over his former supervisee. It appears that had reduction-in-force procedures been used, that might have been the case; however, the selection committee used a process to choose

from "excess employees" which allowed the selection committee more flexibility. Nevertheless, even if the plaintiff believes that he was more qualified than Richey, management was entitled to its selection unless the disparity in qualifications is so glaring as to "virtually jump off the page and slap [one] in the face." *Cofield v. Goldkist*, 267 F.3d 1264 (11th Cir. 2001) (quoting *Denny v. City of Albany*, 247 F.3d 1172, 1187 (11th Cir. 2002)); *see also id.* at 1269 ("[F]ederal courts 'do not sit as super-personnel department[s] that reexamine an entity's business decisions.'"). Accordingly the court finds that the relevant inquiry is whether the disparity between the candidates was so great that a reasonable fact finder could infer that McPherson did not believe Richey to be better qualified.

Plaintiff bases most of his arguments on the fact that he had better supervisory skills than Richey. Yet McPherson explains that the selection panel was not necessarily looking for a supervisor. Rather, the panel made its selection based on education, performance appraisals, prior work history as it related to the position. (McPherson Dep. at 43). Specifically McPherson indicates that "[w]e weren't looking for a supervisor. And I don't recall what would have been in his record at that time. But at that time that was not an important criteria. (*Id.* at 43). Outside of Bush's speculations regarding the contents of his file, his case includes no evidence that the selection panel's actions were pretextual or based upon race.[1] The scenario which the court finds more likely is that the selection panel

---

[1] Plaintiff himself stated that, although he considered Richey to be slow that when he supervised Richey he told him he was "doing okay." (Bush Depo. at p. 47). The following line of questioning is also informative:

Q.   Do you think his [performance] appraisals reflect any negative comments
A.   I don't think so.
Q.   So, according to his appraisals, he did a fairly good job?
A.   Yes.

was trying to quickly fill a number of positions and was choosing from several qualified candidates. McPherson chose to emphasize certain qualifications over length of service and supervisory skills and the court can not second-guess that decision. *Goldkist*, 267 F.3d at 1269. Accordingly the court will grant the defendant's motion for summary judgment on the plaintiff's race discrimination claims.

### C.     Disability Discrimination

The Rehabilitation Act (the Act) prohibits federal agencies from discriminating against otherwise qualified  individuals with a disability. 29 U.S.C. § 791. To establish a prima facie case of discrimination under the Act, an individual must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability. *Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d 907, 910, 915 (11th Cir. 1996); *Servino v. North Fort Myers Fire Control Dist.*, 935 F.2d 1179, 1183 (11th Cir. 1991). The defendant contends that summary judgment is merited because the plaintiff cannot prove either the first or the third prongs of the prima facie case and the court agrees.

The Act defines "individual with a disability" as any person who: (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment. 29 U.S.C. § 706(8)(B). To qualify as disabled under subsection (A) of the ADA's definition of disability, a claimant must initially prove that he or she has a physical or mental

---

*(Id.)*.

impairment. 42 U.S.C. § 12102(2)(A); *Toyota Motor Manufacturing, Kentucy Inc. v. Williams*, 122 S. Ct. 681 (2002).

Plaintiff alleges that his non-selection was due to his disability and that the defendant was aware of his disability at the time of his non-selection (Complaint ¶¶ 16, 19). Yet the plaintiff's answers to his depositions reveal that he had no disability at the time of his separation from Ft. McClellan. (Bush Dep. at 14, 61). Defendant argues and the court agrees that the plaintiff's condition amounted to a "temporary inability to work while recuperating from surgery." As such it was not evidence of a disability covered by the Act. *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999). Because the plaintiff was under no physical constraints at the time the employment decision was made, the court cannot find that he was discriminated against because of his disability. Moreover, even if the plaintiff could establish a prima facie case, the court reiterates its holding discussed above that there is absolutely no evidence that the decision was pretextual.

**V.     Conclusion**

The court will enter an order confirming this memorandum of opinion.

Done, this 24th of February, 2003.

Edwin Nelson
United States District Judge